1   Camille M. Arnold, NY Bar No. 2505907
    (carnold@cftc.gov)
2   Brigitte C. Weyls, IL ARDC No. 6278696
    (bweyls@cftc.gov)
3   Susan J. Gradman, IL ARDC No. 6225060
    (sgradman@cftc.gov)
4
    United States Commodity Futures Trading Commission
5   525 West Monroe Street, Suite 1100
    Chicago, Illinois 60661
6   Telephone: (312) 596-0524 (Arnold)
7   Telephone: (312) 596-0547 (Weyls)
    Telephone: (312) 596-0523 (Gradman)
8   Facsimile: (312) 596-0714
9
10  Kent Kawakami, CA Bar No. 149803
    (kent.kawakami@usdoj.gov)
11  Assistant United States Attorney
12  United States Attorney's Office
    Central District of California - Civil Division
13  300 North Los Angeles Street Room 7516
    Los Angeles, CA 90012
14  Telephone: (213) 894-4858
15  Facsimile: (213) 894-2380
    Local Counsel
16

17              UNITED STATES DISTRICT COURT
                CENTRAL DISTRICT CALIFORNIA
18                   WESTERN DIVISION
19
    _____
20  **United States Commodity**      )
    **Futures Trading Commission,**  )
21                   **Plaintiff,**  )    **Case No:** CV 10-03834 ODW
                     **vs.**          )    (FMO)
22                                    )    **PLAINTIFF'S** ~~PROPOSED~~
23   **New Golden Investment Group,** )    **ORDER FOR PRELIMINARY**
     **LLC a.k.a, NGI Group, LLC, a.k.a.,**)  **INJUNCTION AND OTHER**
24  **New Golden Management, a.k.a.,** )    **ANCILLARY RELIEF AGAINST**
25  **New Golden Entertainment, LLC,** )    **DEFENDANT** Jose C. Naranjo

26                              1

**a.k.a. Grupo NGI International,**
**Inc., a.k.a., NGI Group**
**International, Inc., Ruben**
**Gonzalez, and Jose C. Naranjo,**
        **Defendants.**

)
)
)
)
)

Time:
Date: June____, 2010

## [████████████] ORDER FOR PRELIMINARY INJUNCTION AGAINST DEFENDANTS

On May 20, 2010, Plaintiff Commodity Futures Trading Commission ("Commission") filed a Complaint against Defendants New Golden Investment Group, LLC a.k.a, NGI Group, LLC, a.k.a., New Golden Management, a.k.a., New Golden Entertainment, LLC, a.k.a. Grupo NGI International, Inc., a.k.a., NGI Group International, Inc. ("NGI"), Ruben Gonzalez ("Gonzalez"), and Jose C. Naranjo ("Naranjo") seeking injunctive and other equitable relief, as well as the imposition of civil penalties, for violations of the Commodity Exchange Act ("Act") as amended by the Food, Conservation, and Energy Act of 2008, Pub. L. No. 110-246, Title XIII (the CFTC Reauthorization Act ("CRA")), § 13102, 122 Stat. 1651 (enacted June 18, 2008), to be codified at 7 U.S.C. §§ 1 *et seq.* On May 21, 2010, this Court entered a statutory restraining order against Defendants and a rule to show cause order as to why a preliminary injunction should not issue against Defendants, and set the matter for hearing on June 14, 2010.

The Complaint alleges that Defendants have cheated, defrauded and deceived or attempted to cheat, defraud or deceive their customers by making

2

material misrepresentations and/or failing to disclose material facts to these customers, and by misappropriating their funds, in connection with commodity futures trading, in violation of Sections 4b(a)(1)(A) and (C) of the Act as amended by the CRA, 7 U.S.C. §§ 6b(a)(1)(A) and (C).

The Court has considered the witness testimony at the preliminary injunction hearing on June 14, 2010, reviewed Plaintiff's Motion for a Preliminary Injunction, the Memorandum of Points and Authorities in support of its motion and the supporting declarations and related exhibits, and being fully advised in the premises;

**THE COURT FINDS THAT:**

1.    This Court has jurisdiction over the subject matter of this action and the parties pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1, which authorizes this Court to enter a Preliminary Injunction when any person has engaged, is engaging, or is about to engage in any act or practice constituting a violation of any provision of the Act or any rule, regulation or order thereunder.

2.    Venue properly lies with this Court pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1(e), in that Defendants are found in, inhabit, or transact business in this district, and the acts and practices in violation of the Act have occurred, are occurring, or are about to occur within this district, among other places.

3.     Plaintiff Commodity Futures Trading Commission is an independent federal regulatory agency that is charged with administering and enforcing the Act, 7 U.S.C. §§ 1 *et seq.*, and the regulations promulgated thereunder, 17 C.F.R. §§ 1 *et seq.* (2009).

4.     Defendant NGI was incorporated as a Nevada limited liability corporation in August 2008, but is currently in default status. Its main business address is 100 N. Barranca Ave., West Covina, California 91791. NGI also had an office at 4336 Edward Avenue, Las Vegas, Nevada 89108. NGI has never been registered with the Commission in any capacity.

5.     Ruben Gonzalez is a principal and managing member of NGI. Gonzalez is a Mexican National who resides in West Covina, California. The Department of Justice arrested and incarcerated him on immigration charges on October 23, 2009, and he is currently in prison. Gonzalez has never been registered with the Commission in any capacity.

6.     Jose Naranjo is a principal and managing member of NGI. Naranjo is a Mexican National whose last known address is in La Mirada, California. Naranjo has never been registered with the Commission in any capacity.

7.     It appears that there is good cause to believe that Defendants NGI, Gonzalez and Naranjo, have engaged, are engaging in, and are about to engage in

violations of Sections 4b(a)(1)(A)and (C) of the Act, as amended by the CRA, 7 U.S.C. §§ 6a(1)(A) and (C). There is good cause to believe further that customers and prospective customers may be cheated and defrauded and that immediate and irreparable damage to the Court's ability to grant effective final relief for customers in the form of monetary redress will occur from the dissipation of customers' assets and the destruction of records unless Defendants, NGI, Gonzalez and Naranjo are immediately restrained and enjoined by order of this Court and, accordingly, there is good cause to issue this Order.

8.     It further appears to the satisfaction of the Court that there is proper case for granting this preliminary injunction to preserve the status quo and to protect public customers and prospective customers from further deceit, loss or damage.

## DEFINITIONS

For the purposes of this Order, the following definitions apply:

9.     The term "document" is synonymous in meaning and equal in scope to the usage of the term in Federal Rule of Civil Procedure 34(a), and includes, writings, drawings, graphs, charts, photographs, audio and video recordings, computer records, and other data compilations from which information can be obtained and translated, if necessary, through detection devices into reasonably

usable form.  A draft or non-identical copy is a separate document within the meaning of the term.

10.    "Defendants" means NGI, Gonzalez and Naranjo, and any person insofar as he or she is acting in the capacity of an officer, agent, servant, employee or attorney of Defendants, and any person who receives actual notice of this Order by personal service or otherwise, including facsimile or e-mail, insofar as he or she is acting in concert or participation with Defendants.

**A.    NGI's Customer Solicitation**

The verified facts and sworn testimony regarding NGI's customer solicitation show that:

11.    NGI, Gonzalez and Naranjo solicited customers through several means, including newspaper ads in Spanish language newspapers, websites they created at www.ngigroupint.com, www.grupongiint.com and www.groupngiint.com, which are no longer active, promotional brochures, and NGI's employees who referred customers to invest with NGI.  NGI's newspaper ads claimed that customers can "make 100%" and "double" their money in oil, gold, silver, and other commodities, hotel and resort investments, real estate development, and global trading.  With this teaser, the ads listed a telephone

6

number for prospective investors to call to learn more about NGI's investment program.

12.     In connection with these oral solicitations, Gonzalez and Naranjo instructed NGI employees to inform customers and prospective customers that their investment profits would come from NGI's mining operations and also from NGI's trading of commodity futures contracts.  Specifically, Gonzalez told at least one NGI employee to tell prospective customers that NGI traded gold, silver, oil, grains, orange juice and lumber futures.  Gonzalez and Naranjo also instructed NGI employees to invite prospective customers to NGI's office to meet them.

13.     This, too, was part of a scheme to defraud, in that Gonzalez and Naranjo took steps to make it appear to customers and prospective customers who visited NGI that NGI was a sophisticated trading operation engaged in trading commodity futures with customer funds.  Specifically, they set up computers in NGI's office with trading software to create the appearance that NGI was engaged in electronic commodity futures trading when it was not.  Additionally, they sent at least two people who had no experience trading commodity futures to a commodity futures trading seminar so that they would seem knowledgeable in commodity futures trading when soliciting prospective customers.

14.     When prospective customers visited NGI's offices, NGI employees sent them to Gonzalez and Naranjo to "close" the deal.  Gonzalez and Naranjo again promised profits of 100% or more per year with no risk of loss, and told at least some customers that their funds would be used for commodity futures trading. Gonzalez and Naranjo then pressed prospective customers to invest even if they did not have the funds readily available, going as far as urging them to take cash advances on their credit cards or withdraw funds from their retirement accounts in order to fund investments with NGI.  To document their investments, the Defendants gave customers promissory notes stating the amount of the investment and promising monthly returns from 5% to 15%.

**B.     Forex Trading-Related Activities**

The verified facts and sworn testimony regarding forex trading-related activities show that:

15.     Defendants never engaged in any mining activities, real estate development or any commodity futures trading on a registered entity.  Defendants sent approximately $290,000 of NGI customer funds to Forex Finanzas, a purported Panamanian forex trading company, for the purpose of trading off-exchange foreign currencies, but NGI did not recover the funds.  Defendants also sent approximately $100,000 of NGI customer funds to Trader's International

8

Return Network ("TIRN"), another purported Panamanian forex trading company, for the purpose of trading off-exchange foreign currencies.  However, those funds also appear to be unrecoverable.

## C.   NGI's Misappropriation

16.   Since at least August 2008, NGI and its principals, Gonzalez and Naranjo, have solicited and accepted approximately $3.65 million from at least 165 customers.  Once the Defendants received customer funds, they deposited the funds into bank accounts held in NGI's name.  Although the Defendants instructed NGI employees to represent to customers and prospective customers that at least part of their funds would be used for commodity futures trading, the Defendants misappropriated part of the customer funds by using the investors' money for their personal benefit.

17.   Specifically, Gonzalez transferred at least $260,000 from NGI's business accounts to his personal bank account, Naranjo transferred at least $267,000 from NGI's business accounts to his personal account, and approximately $62,000 in checks to "cash" were drawn on NGI's business account.  Additionally, the Defendants used funds from NGI's business accounts to purchase a Mercedes-Benz, airline tickets, and retail items from The Men's Warehouse and Wal-Mart, and to make payments on Gonzalez's house.

9

18. The Defendants also used new customer funds to pay purported profits to existing investors in a manner akin to a Ponzi scheme. Specifically, from about August 2008 to about June 2009, Defendants paid some investors 10% per month, representing that such payments were investment profits. Payments to investors totaled approximately $1.7 million. However, the Defendants had not generated any investment profits. Rather, they were using new customer investments to pay the 10% per month that they had guaranteed to existing customers. In about June 2009, the Defendants abruptly stopped making such payments, and since then have not honored customers' withdrawal requests.

19. Gonzalez and Naranjo told customers who requested return of their funds that the funds were being held at a bank in Mexico that refuses to release the funds. Gonzalez and Naranjo also encouraged customers to forego their redemption requests, telling them that NGI now has new investments, particularly in oil mining projects, that would soon make huge profits for them if they left their money with NGI. Gonzalez and Naranjo have also given some customers checks for their principal investment and purported profits that were returned due to insufficient funds in NGI's accounts when customers sought to cash or deposit them.

**D.     Naranjo and Gonzalez Control NGI**

The verified facts and sworn testimony regarding Naranjo and Gonzalez's

control of NGI show that:

20.     Gonzalez and Naranjo established NGI and are its only managing

members.  They each are responsible for NGI's day to day operations, including

but not limited to hiring, firing and supervising NGI employees and determining

crucial aspects of NGI's operations such as the percentage of profits offered to

customers and how NGI customer funds would be used.  Gonzalez and Naranjo are

signatories on NGI's bank accounts at Wells Fargo Bank.  Gonzalez is signatory

on NGI's bank accounts at Bank of America and Chase.  Gonzalez and Naranjo

also personally participated in defrauding NGI customers by misrepresenting profit

potential, risk of loss, and trading profits to prospective and actual customers, and

misappropriated NGI customer money.

**VIOLATIONS OF THE COMMODITY EXCHANGE ACT
AND REGULATIONS**

21.     By the conduct described in paragraphs 1 through 20 above, NGI,

Gonzalez and Naranjo, in or in connection with commodity futures contracts made,

or to be made, for or on behalf of other persons, cheated or defrauded, or attempted

to cheat or defraud, customers and prospective customers and willfully deceived or

attempted to deceive customers and prospective customers by, among other things,

knowingly: (i) misrepresenting material facts to NGI customers and prospective customers, including the profit potential of investing with NGI; (ii) omitting material facts to NGI customers and prospective customers, including the risk of loss in investing with NGI; and (iii) misappropriating NGI customer funds all in violation of Sections 4b(a)(1)(A) and (C) of the Act as amended by the CRA, to be codified at 7 U.S.C. §§ 6b(a)(1)(A) and (C).

22.     By the conduct described in paragraphs 1 through 20 above, Gonzalez and Naranjo, directly or indirectly, controlled NGI, and did not act in good faith or knowingly induced, directly or indirectly, NGI's conduct and pursuant to Section 13(b) of the Act, are liable for NGI's violations of Sections 4b(a)(1)(A) and (C) of the Act, as amended by the CRA, to be codified at 7 U.S.C. §§ 6b(a)(1)(A) and (C), 7 U.S.C. § 13c(b).

23.     By the conduct described in paragraphs 1 through 20 above, Gonzalez and Naranjo, along with other NGI employees and agents, engaged in the foregoing acts, misrepresentations, omissions, and failures within the scope of their employment with NGI.  Therefore, NGI is liable for these acts, misrepresentations, omissions and failures pursuant to Section 2(a)(1)(B) of the Act, 7 U.S.C. § 2(a)(1)( B), and Regulation 1.2, 17 C.F.R. § 1.2 (2009).

# I.  INJUNCTIVE RELIEF GRANTED

**IT IS THEREFORE ORDERED THAT:**

24.     NGI, Gonzalez and Naranjo are restrained, enjoined and prohibited, until further order of the Court, from directly or indirectly cheating, defrauding or willfully deceiving, or attempting to cheat, defraud or willfully deceive any other person in or in connection with any order to make, or the making of any contract of sale of any commodity for future delivery, made or to be made, for or on behalf of any other person in violation of Sections 4b(a)(1)(A) and (C) of the Act as amended by the CRA, to be codified at 7 U.S.C. §§ 6b(a)(1)(A) and (C).

25.     NGI, Gonzalez and Naranjo are further restrained, enjoined and prohibited, until further order of the Court, from directly or indirectly:

A.     trading on or subject to the rules of any registered entity (as that term is defined in Section 1a(29) of the Act, 7 U.S.C. § 1a(29) (2006);

B.     entering into any transactions involving commodity futures, options on commodity futures, commodity options (as that term is defined in Regulation 32.1(b)(1), 17 C.F.R. § 32.1(b)(1) (2009)) ("commodity options"), and/or foreign currency (as described in Sections 2(c)(2)(B) and 2(c)(2)(C)(i) of the Act as amended by the CRA, to be codified at 7 U.S.C. §§ 2(c)(2)(B) and 2(c)(2)(C)(i)) ("forex contracts") for their own personal account or for any account in which they have a direct or indirect interest;

C.  having any commodity futures, options on commodity futures, commodity options, and/or forex contracts traded on their behalf;

D.  controlling or directing the trading for or on behalf of any other person or entity, whether by power of attorney or otherwise, in any account involving commodity futures, options on commodity futures, commodity options, and/or forex contracts;

E.  soliciting, receiving, or accepting any funds from any person for the purpose of purchasing or selling any commodity futures, options on commodity futures, commodity options, and/or forex contracts;

F.  applying for registration or claiming exemption from registration with the Commission in any capacity, and engaging in any activity requiring such registration or exemption from registration with the Commission, except as provided for in Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9) (2009); and

G.  acting as a principal (as that term is defined in Regulation 3.1(a), 17 C.F.R. § 3.1(a) (2009)), agent or any other officer or employee of any person registered, exempted from registration or required to be registered with the Commission, except as provided for in Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9) (2009).

26.  NGI, Gonzalez and Naranjo are further restrained, enjoined and prohibited, until further order of the Court, from directly or indirectly:

A.  dissipating, withdrawing, transferring, removing, concealing or disposing of cash, cashiers checks, funds, assets or other property of, or within the custody, control or possession of, Defendants, including, but not limited to, all funds, personal property, money or securities held in safes, safety deposit boxes and all funds on deposit in any financial institution, bank or savings and loan account, including funds or property of

14

investors, wherever located, whether held in the name of any Defendant or otherwise, and the assets affected by this paragraph shall include both existing assets and income and assets acquired after the effective date of this Order;

B.   destroying, mutilating, concealing, altering or disposing of, in any manner, any of the books and records, documents, correspondence, brochures, manuals, electronically stored data, tape records or other property of Defendants, wherever located, including all such records concerning Defendants' business operations; and

C.   denying Commission representatives access to Defendants' books and records.

27.   Until further order of this Court, NGI, Gonzalez and Naranjo, and each firm, corporation, partnership, association or other person or entity which holds or is a depository of their funds, securities, assets or other property of any kind, are prohibited from directly or indirectly transferring, withdrawing, removing or disposing of any such funds, securities, assets or other property.

28.   The injunctive provisions of this Order shall be binding on Defendants, upon any person insofar as he or she is acting in the capacity of officer, agent, servant, employee or attorney of Defendants, and upon any person who receives actual notice of this Order by personal service, facsimile or otherwise insofar as he or she is acting in active concert or participation with Defendants.

29.   NGI, Gonzalez and Naranjo shall prepare, sign and file with the Court, within 30 days of the date of this Order, a complete and accurate accounting

15

for the period of August 1, 2008, to the date of such accounting, which shall be no earlier than the date of this Order.  Such accounting shall include, without limitation, the identification of:

      A.    the names and last known addresses, phone numbers, and e-mail addresses of all of NGI's customers;

      B.    all funds, securities, commodity interests, assets and other property currently owned or controlled (legally, equitably or otherwise) directly or indirectly by Defendants;

      C.    all funds, securities, commodity interests, assets and other property received directly or indirectly by Defendants, whether individually or jointly, describing the source, amount, disposition, and current location of each listed item;

      D.    all funds, securities, commodity interests, assets and other property transferred or otherwise disposed of directly or indirectly by Defendants describing the source, amount, disposition, and current location of each listed item, including accounts or assets of Defendants held by financial institutions located outside the territorial United States; and

      E.    the name and last known address of each bailee, debtor or other person or entity currently holding any funds, securities, commodity interests, assets or other property owned or controlled (legally, equitably or otherwise) by Defendants, either individually or jointly.

     30.    It is further ordered that representatives of the Plaintiff Commission upon reasonable notice, be allowed to inspect the books, records and other electronically stored data, tape recordings, and other documents of NGI, Gonzalez and Naranjo and their agents, including all such records of their business

operations, wherever they are situated and whether they are in the hands of

Defendants or others and to copy said documents, data, and records either on or off

the premises where they may be situated.

31.    It is further ordered that NGI, Gonzalez and Naranjo shall

immediately take all steps within their power to repatriate all funds, assets and

property held by, under the control of, or in the name of NGI, Gonzalez and

Naranjo, whether held jointly or otherwise, outside the United States, including but

not limited to all funds on deposit in any banks, brokerage houses or other financial

institutions, by paying them to the Clerk of Court or as otherwise ordered by the

Court, for further disposition in this case.

## II.  BOND NOT REQUIRED OF PLAINTIFF

**IT IS FURTHER ORDERED** that:

Pursuant to Section 6c(b) of the Act, 7 U.S.C. § 13a-1, no bond need be posted

by the Plaintiff CFTC, which is an agency of the United States of America.

## III. STAY

**IT IS FURTHER ORDERED** that except by leave of the Court, NGI,

Gonzalez, and Naranjo, and all other persons and entities, be and hereby are stayed

from taking any action to establish or enforce any claim, right or interest for,

17

against, on behalf of, or in the name of NGI, Gonzalez and Naranjo, including but

not limited to, the following actions:

     A.     commencing, prosecuting, litigating or enforcing any suit, except that actions may be filed to toll any applicable statute of limitations;

     B.     accelerating the due date of any obligation or claimed obligation, enforcing any lien upon, or taking or attempting to take possession of, or retaining possession of, property of the Defendants or any property claimed by the Defendants, or attempting to foreclose, forfeit, alter or terminate any of the Defendants' interests in property, whether such acts are part of a judicial proceeding or otherwise;

     C.     using self-help or executing or issuing, or causing the execution or issuance of any court attachment, subpoena, replevin, execution or other process for the purpose of impounding or taking possession of or interfering with, or creating or enforcing a lien upon any property, wherever located, owned by or in the possession of the Defendants; and

     D.     doing any act or thing to interfere with the exclusive jurisdiction of this Court over the property and assets of the Defendants. This Paragraph does not stay the commencement or continuation of an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power.

## IV. DIRECTIVES TO FINANCIAL INSTITUTIONS AND OTHERS

**IT IS FURTHER ORDERED** that pending further Order of this Court,

any financial or brokerage institution, business entity, or person that holds,

18

controls, or maintains custody of any account or asset owned, controlled, managed,

or held by, on behalf of, or for the benefit of NGI, Gonzalez and Naranjo, or has

held, controlled, or maintained custody of any account or asset owned, controlled,

managed, or held by, on behalf of, or for the benefit of NGI, Gonzalez and Naranjo,

at any time since August 1, 2008, shall:

       A.    provide counsel for the Commission, within five (5) business days of receiving a copy of this Order, a statement setting forth: (a) the identification number of each and every such account or asset titled in the name, individually or jointly, of NGI, Gonzalez and Naranjo, or owned, controlled, managed, or held by, on behalf of, or for the benefit of NGI, Gonzalez and Naranjo: (b) the balance of each such account, or a description of the nature and value of such asset as of the close of business on the day on which this Order is served, and, if the account or other asset has been closed or removed, the date closed or removed, the total funds removed in order to close the account, and the name of the person or entity to whom such account or other asset was remitted; and (c) the identification of any safe deposit box that is either titled in the name, individually or jointly, of NGI, Gonzalez and Naranjo, or is otherwise subject to access by NGI, Gonzalez and Naranjo; and

       B.    upon request by the Commission, promptly provide the Commission with copies of all records or other documentation pertaining to such account or asset, including, but not limited to, originals or copies of account applications, account statements, signature cards, checks, drafts, deposit tickets, transfers to and from the accounts, all other debit and credit instruments or slips, currency transaction reports, 1099 forms, and safe deposit box logs.

## V.  EXPEDITED DISCOVERY

**IT IS FURTHER ORDERED** that the Plaintiff may continue with expedited discovery.

## VI.  SERVICE OF ORDER

**IT IS FURTHER ORDERED** that copies of this Order may be served by any means, including facsimile transmission and Federal Express, upon any financial institution or other entity or person that may have possession, custody, or control of any documents or assets of NGI, Gonzalez and Naranjo, or that may be subject to any provision of this Order.  Susan Gradman, Camille Arnold, Brigitte Weyls and Judith McCorkle, all employees of the CFTC, are hereby specially appointed to serve process, including this Order and all other papers in this cause.

## VII.  SERVICE ON THE COMMISSION

**IT IS FURTHER ORDERED** that NGI, Gonzalez and Naranjo shall serve all pleadings, correspondence, and notices required by this Order, and other materials on the Plaintiff Commission by delivering a copy to Camille Arnold and Brigitte Weyls, Division of Enforcement, Commodity Futures Trading Commission, 525 W. Monroe, Suite 1100, Chicago, Illinois 60661.

## VIII.  COURT MAINTAINS JURISDICTION

**IT IS FURTHER ORDERED** that this Preliminary Injunction shall remain in full force and effect until further Order of this Court, upon application, notice and an opportunity to be heard, and that this Court retains jurisdiction of this matter for all purposes.

## IX.  STATUTORY RESTRAINING ORDER SUPERSEDED

**IT IS FURTHER ORDERED** that this Preliminary Injunction supersedes the Statutory Restraining Order entered by the Court on May 21, 2010.

## X.  FURTHER COURT HEARINGS

**IT IS FURTHER ORDERED** that this matter is set for a status hearing on

as to Jose C. Naranjo only

**IT IS SO ORDERED**.

Dated:  06-14-2010

_____
UNITED STATES DISTRICT JUDGE